UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID TERREBONNE** | **CIVIL ACTION** |
| **VERSUS** | **NO:   16-8630** |
| **B & J MARTIN, INC., ET AL** | **SECTION: "H" (4)** |

## ORDER AND REASONS

Before the Court is **Motion for Sanctions (R. Doc. 26)** filed by filed by the Plaintiff David Terrebonne seeking an impositions of sanctions against Defendant, B & J Martin, Inc. ("Defendant") and its counsel of record for improper contact with the Plaintiff's treating physician. The motion is opposed. R. Doc. 32. The motion was submitted on March 15, 2017 and heard without argument. For the following reasons, the motion is **GRANTED.**

**I.    Background**

This action was filed in the District Court on June 7, 2016 under the Jones Act. R. Doc. 1. Plaintiff David Terrebonne ("Plaintiff") alleges that around November or December of 2015 he was working aboard the F/V Amy Claire owned by the Defendant when he began to experience chest pain. *Id.* at p. 2. The Plaintiff further alleges that he informed the Defendant of the chest pain for weeks, but the Defendant allegedly would not permit him to leave the vessel to seek medical attention. *Id.* Plaintiff alleges that he was once permitted to leave but was called back before he could medical help. *Id.* Before he could seek medical help, the Plaintiff suffered a cardiac event and went to the hospital in January 2016. While there, he was advised that he needed a small procedure, but the Defendant allegedly refused to pay. *Id.* at p. 3. The Defendant allegedly refused to cover the procedure for another five (5) months until the Plaintiff finally was forced to undergo open heart surgery at UMC in New Orleans, Louisiana. The Plaintiff alleges that the Defendant's negligence exacerbated the illness and states a number of claims under general maritime laws. The Plaintiff seeks a total of $1,850,000. *Id.* at p. 6-7.

At this time, the Plaintiff has filed a motion for sanctions against the Defendant. R. Doc. 26. The Plaintiff states that on August 15, 2016 he executed a number of medical release authorizations allowing the named providers to disclose "[a]ny and all records concerning my evaluation and/or treatment. . ." R. Doc. 26-1, p. 2. The Plaintiff argues that he did not authorize the release of any other information.

Thereafter, on December 13, 2016, the Defendant's counsel of record, Georges Legrand, wrote a letter to Dr. John Jackson, one of the Plaintiff's treating physicians. *Id.* In that letter, Legrand pose a number of questions to Dr. Jackson concerning the Plaintiff's condition and whether the Plaintiff had reached maximum medical improvement. *Id.* The letter also included the Plaintiff's authorization and instructed Dr. Jackson that the authorization allowed him to respond to the letter. *Id.* at p. 3. Legrand did not copy the Plaintiff or Plaintiff's counsel on that letter.

On January 9, 2017, the Plaintiff received his first notice of the Defendant's contact with Dr. Jackson by way of a letter from Legrand which included a copy of a report by Dr. Jackson authored in response to Legrand's letter. *Id.* Upset that Legrand had made an *ex parte* communication with one of the Plaintiff's treating physicians, Plaintiff's counsel emailed Legrand requesting that he not communicate with any other of the Plaintiff's treating physicians. *Id.*

On February 13, 2017, the Plaintiff was copied on another letter sent by Legrand to Dr. Alvin Timothy, another of the Plaintiff's treating physicians. *Id.* Again, Legrand posed a number of questions to the doctor and instructed him that the Plaintiff's authorization allowed him answer those questions. *Id.* Thereafter, on February 15, 2017, the Plaintiff revoked any and all medical authorizations signed by him in an effort to prevent Legrand from further contacting his physicians. *Id.*

Given this conduct by the Defendant's counsel, the Plaintiff has filed the instant motion for sanctions, arguing that the Defendant's counsel has committed a number of ethical violations and engaged in bad faith. *Id.* at p. 5-11. In particular, the Plaintiff seeks to have the report authored by Dr. Jackson to be stricken; for monetary sanctions imposed on Defendant's counsel, including attorney's fees and costs associated with the filing of the motion; and, ultimately, for the disqualification of Legrand from the instant case. *Id.* at p. 12.

In response, the Defendant has opposed the motion. R. Doc. 32. The Defendant argues that its counsel conduct has not violated Louisiana's narrow health care provider-patient privilege; that Defendant's counsel has not engaged in bad faith; and that the Court should specifically allow *ex parte* communication by the Defendant with the Plaintiff's treating physicians. *Id.*

## II.     Standard of Review

"A district court has the inherent authority to impose sanctions 'in order to control the litigation before it'" as well as for conduct before the Court. *Positive Software Solutions, Inc. v. New Century Mortg. Corp.,* 619 F.3d 458, 460 (5th Cir. 2010) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 703 (5th Cir.1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)); *see also Chambers v. NASCO,* 501 U.S. 32, 46 (1991); *Batson v. Neal Spelce Assoc., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber,* 417 U.S. 116, 129 (1974)) (noting courts have the power to sanction where a party has "'acted in bad faith, vexatiously, wantonly or for oppressive reasons'"). However, this authority "must be used with great restraint and caution." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 86 F.3d 464, 467 (5th Cir.1996) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980)).  As such, "sanctions should be confined to instances of bad faith or

willful abuse of the judicial process." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).

## III.   Analysis

The Plaintiff has filed the instant motion seeking sanctions against the Defendant and Defendant's counsel based on a number of alleged violations arising out of the Defendant's counsel's *ex parte* written communication with the Plaintiff's treating physician. In particular, the Plaintiff alleges that Legrand violated: Louisiana Rule of Professional Conduct 3.4(c) by utilizing a method outside of formal discovery to obtain information from the Plaintiff's expert; Louisiana Rule of Professional Conduct 4.1(a) by making a knowingly false statement of law to a third person; Louisiana Rule of Professional Conduct 4.1(a) by making false statements of fact to a third person; and Louisiana Rule of Professional Conduct 4.4 by utilizing methods that violate the legal rights of third persons. R. Doc. 26-1, p. 5-7. Moreover, the Plaintiff alleges that Legrand engaged in bad faith purely by making repeated *ex parte* communications with the Plaintiff's treating physician even after he was advised not to by Plaintiff's counsel. *Id.* at p. 8.

Here, the Defendant argues that neither it nor Legrand should be sanctioned because the *ex parte* communications with the Plaintiff's treating physician was not in violation of either the Health Insurance Portability and Accountability Act ("HIPPA")[1] or the Health Care Provider-Patient Privilege provided under Louisiana Law. R. Doc. 32, p. 2-5. Moreover, the Defendant argues that Legrand's efforts were not in bad faith but rather good faith attempts to investigate if the Plaintiff had reached maximum medical improvement ("MMI").

The first question the Court looks to is the propriety of Legrand's communication with the Plaintiff's treating physician. In defense of Legrand's action, the Defendant argues that the

---

[1] Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, §§ 261-264, 110 Stat.1936 (1996).

4

communication as not in violation of either HIPPA and/or Louisiana law privilege. *Id.* To this extent, the Plaintiff appears to argue that Legrand acted in violation of both, potentially opening Dr. Jackson to liability himself. R. Doc. 26-1, p. 7.

> In evaluating claims of privilege, Federal Rule of Evidence 501 provides that:
>
> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court.
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision

Fed. R. Evid. 501. Here, the Plaintiff has brought this case under the Jones Act and under the general maritime laws (R. Doc. 1); as such, the Court applies federal admiralty law. *Kidd v. Candy Fleet, LLC*, No. 16-71, 2016 WL 6969437, at *4 n.29 (E.D. La. Nov. 29, 2016) (Vance, J.) (citing *Morgana v. States Marine Lines, Inc.*, 398 U.S. 375 (1970)). Therefore, the Court looks to either the common law, the Constitution, or federal statutes or rules to determine if a privilege applies.

As an initial matter, there is no federal physician-patient privilege. *Gilbreath v. Guadalupe Hosp. Found. Inc.,* 5 F.3d 785, 791 (5th Cir.1993); *Kidd*, 2016 WL 6969437, at *4 n.29; *United States ex. rel. Stewart v. Louisiana Clinic*, No. 99-1767, 2002 WL 31819130 (E.D. La. Dec. 12, 2002) (Wilkinson, M.J.). As such, the focus turns to what if any restrictions Federal statues might place on the information sought by Legrand's communication, namely HIPPA.

> As the Court in *Law v. Zuckerman* succinctly explains:
>
> HIPAA and the standards promulgated by the Secretary of Health and Human Services ("Secretary") in the Code of Federal Regulations set forth the baseline for the release of health information.
>
> A patient's health information may be disclosed pursuant to 45 C.F.R. § 164.512(e)(1)(i), which states that disclosure is permitted "in response to an order of a court ... provided that the covered entity discloses only the protected health information expressly authorized by such order." Health information includes

>any information, whether oral or recorded in any form or medium, that: (1) is created or received by a health care provider ...; and (2) relates to the past, present or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual.
>
>45 C.F.R. § 160.103. A trial or deposition subpoena is appropriately treated differently from an order of the Court. **When medical information is to be released in response to a subpoena or discovery request, the health care provider must receive satisfactory assurance that: (1) there have been good faith attempts to notify the subject of the protected health information in writing of the request and that subject has been given the opportunity to object; or (2) reasonable efforts have been made by the requesting party to obtain a qualified protective order.** 45 C.F.R. § 164.512(e)(1)(ii)(A) and (B).
>
>HIPAA and the related provisions established in the Code of Federal Regulations expressly supercede any contrary provisions of state law except as provided in 42 U.S.C. § 1320d–7(a)(2). Under the relevant exception, HIPAA and its standards do not preempt state law if the state law relates to the privacy of individually identifiable health information and is "more stringent" than HIPAA's requirements. 42 U.S.C. § 1320d–7(a)(2)(B)(referring back to the Historical and Statutory notes to 42 U.S.C § 1320d–2); 45 C.F.R. § 160.203.

307 F. Supp. 2d 705, 708-09 (D. Md. 2004) (emphasis added); *see also Louisiana Clinic*, 2002 WL 31819130, at *3-4 (discussing HIPPA requirements for disclosure in connection with judicial proceeding).[2]

It is clear to the Court that the Legrand's letter to Dr. Jackson—if not also his letter to Dr. Alvin—violated these requirements for HIPPA disclosure in connection with a judicial proceeding. First, the letter sought information related to the Plaintiff's medical condition as well as potential future condition. *See* R. Doc. 26-5. Second, in regards to Legrand's letter to Dr. Jackson, there was no Court order permitting the release nor did the discovery request either notify the Plaintiff and give a chance to object or make reasonable efforts to obtain a protective order.

---

[2] The Court notes that the requirements under Louisiana law do not fit within the relevant exception under HIPPA. *See Louisiana Clinic*, 2002 WL 31819130, at *5.

Indeed, the Court finds Legrand's suggestion in the letter that the authorization permitted the release to be particularly troubling as an attempt to skirt these HIPPA violations.

The Defendant does attempt to argue that Legrand's letters did not violate HIPPA because the Plaintiff had provided a HIPPA compliant authorization for the release of records. R. Doc. 32, p. 2. Moreover, the Defendant argues that "[t]hese authorizations placed no restrictions on the type of communications B & J could have with the physicians." *Id.* However, while it may be true that HIPPA allows for the release of medical information with a proper authorization, 45 C.F.R. § 164.502(a)(1)(iv), the authorizations supplied here simply do not contemplate the release of anything beyond the Plaintiff's medical records. Indeed, the authorizations explicitly state:

> Description of information that may be used/disclosed under this authorization:
>
> Any and all records concerning my evaluation and/or treatment, including but not limited to **records of any and all other doctors, therapists, healthcare providers, diagnostic/radiology centers and hospitals**. . .

R. Doc. 26-4 (emphasis in original) (limiting authorizations to Dr. Jackson and Dr. Alvin). There is no credible argument that this language authorized the release of anything beyond the Plaintiff's records. Certainly, this authorization does not contemplate nor authorize Defendant's counsel to inquire about or otherwise receive other aspects of the Plaintiff's medical information, especially a series of questions about the Plaintiff's condition. As such, the Defendant's argument that the authorization provided for the communication under HIPPA is unpersuasive at best.

Moreover, in addition to the violation of HIPPA's requirements and procedures that the communication engaged in, the practice of unqualified *ex parte* communications with the Plaintiff's treating physician when examined under federal principles has been frowned upon in this district. In *In re Vioxx Products Liability Litigation*, after an informative account of the history

and benefits of physician-patient privilege and relationship, Judge Fallon ultimately concluded that:

> However. . .the "facts" that the treating physician has knowledge of were discovered during the time of a private, privileged relationship. To release this information without the approval of the patient, other than in a deposition or pursuant to a court order, would be in direct conflict with the time honored doctor-patient confidential relationship which has been recognized and protected in both Western and Eastern civilization for over 2000 years. . . .The Court, upon further reflection, now feels that the just option in this case is to protect the relationship between a doctor and patient by restricting defendants from conducting ex parte communications with Plaintiffs' treating physicians but allowing Plaintiffs' counsel to engage in ex parte interviews with those doctors who have not been named as defendants. This approach appears, at first glance, to be one sided and unfair. However, in actuality and as a practical matter, it is not. This modification does not leave the Defendants without any access to information. The Defendants still are entitled to all of the medical records of the Plaintiffs as well as the Plaintiff Profile Forms setting forth each Plaintiff's detailed medical history. The Defendants can also continue to exercise their right to depose the Plaintiffs' treating physicians or confer with them in the presence of Plaintiffs' counsel.

230 F.R.D. 473, 476-77 (E.D. La. July 22, 2005). *Accord, In re Xarelto (Rivaroboxan) Prod. Liab. Litig.*, MDL No. 2592, 2016 WL 915288 (E.D. La. Mar. 9, 2016) (finding that while "federal courts have routinely recognized the propriety of allowing for ex parte interviews under many circumstances" that "[t]he physician-patient relationship is based on mutual trust, and ex parte contacts between physicians and defendants. . .undermine that relationship. No patient wants to hear that his or her doctor engaged in unsupervised discussions with a person that the patient sued. This may lead the patient to be less forthcoming with doctors who have spent years developing a relationship of trust and confidence"). The Court finds Legrand's violation of this general principle to be deeply unsettling.

In addition to the problematic nature of Legrand's *ex parte* communication with the Plaintiff's treating physician, the Court also finds the manner in which Legrand communicated with the physicians to be ethically troubling. Louisiana Rule of Professional Conduct 4.1(a)

8

provides that "in the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person." Under Local Rule 83.2.3, the Eastern District of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association.

In his letter to Dr. Jackson as well as Dr. Alvin, Legrand stated that he "enclose[d] an authorization allowing you to respond to this letter." R. Doc. 26-4. This is a patently false representation of the enclosed authorization.[3] As discussed above, the authorization explicitly provided for the release of medical records only and in no way authorized the Plaintiff's treating physicians to answer questions posed by the Defendant's counsel *ex parte*. For the first letter, this falsity coupled with the lack of notice to the Plaintiff about the first letter being sent demonstrates to the Court that the Defendant's Counsel intended to encourage a response to the letter without raising the suspicion of the doctor who might otherwise be hesitant to speak with opposing counsel. For the second letter, and perhaps even more troubling, after Legrand received notice from the Plaintiff that his authorization was not meant to authorize this type of direct questions of the physicians *ex parte*, Legrand again in his letter to Dr. Alvin repeated the same falsity. While Legrand eventually instructed Dr. Alvin to not respond after receiving an objection from the Plaintiff, this corrective action does not alter the fact that Legrand misrepresented the nature of the authorization even after being put on notice by the Plaintiff of his misrepresentation. To the undersigned, there is no clearer misrepresentation of a material fact—the scope of the release—than this.

Given the foregoing, the Court finds that Legrand acted in bad faith. Given his years of experience, there is no excuse for Legrand to either explicitly violate the procedures and provisions of HIPPA in acquiring information from a Plaintiff's physician or patently misrepresent the scope

---

[3] The Court also notes that the medical authorization appears to have been drafted by Legrand's office which further undermines any argument the Defendant makes about its scope given its clear language.

9

of a medical authorization. Because the Court finds that Legrand acted in bad faith, it is within the undersigned's authority to appropriately sanction the Defendant.

The Court does not believe that the conduct exhibited by Legrand merits disqualification as the Plaintiff urges. Disqualification is a severe penalty saved for the most serious of ethical violations. *See, e.g., Horner v. Rowan Cos., Inc.,* 153 F.R.D. 597, 602 (S.D. Tex. 1994) ("Disqualification of counsel, however, is an extreme and disfavored sanction"). Simply put, while troubling and unethical, Legrand's actions do amount to the heightened level required to disqualify him, particularly when such action is reserved for conflicts of interest. *See, e.g., Sumpter v. Hungerford*, No. 12-717, 2013 WL 2181296 (E.D. La. May 2013).

Nonetheless, the Court will not let this instance of inappropriate conduct simply pass by. Rather, the Court finds the other two sanctions requested by the Plaintiff to be appropriate. First, the Court will strike and disallow the Defendant from using the ill-gotten report furnished by Dr. Jackson. If the Defendant wishes to have further information—including the information received in bad faith—the Defendant may use the appropriate discovery procedures to acquire that information. Second, the Court will also require Legrand to pay for the attorney's fees associated with the instant motion for sanctions.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion for Sanctions (R. Doc. 26)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the Defendant may not use as evidence or otherwise the report furnished by Dr. John Jackson dated January 3, 2017.

**IT IS FURTHER ORDERED** that the Plaintiff is awarded attorney's fees associated with the instant motion.

**IT IS FURTHER ORDERED** that the Plaintiff shall file a motion to fix attorney fees into the record by **April 4, 2017,** along with: (1) an affidavit attesting to its attorney's education, background, skills and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill and reputation and; (3) the documentation required by Local Rule 54.2. Any opposition to the fee application shall be filed no later than **April 11, 2017**. The motion shall be set for hearing on **April 19, 2017**, to be heard without oral argument.

New Orleans, Louisiana, this 17th day of March 2017.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

**CLERK TO NOTIFY:**

**JUDGE JANE TRICHE MILAZZO**